# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF IOWA
### CENTRAL DIVISION

| | |
|---|---|
| **DION SCOTT MILLER,** | |
| Petitioner, | **No. 12-CV-3009-DEO** |
| vs. | **RULING ON 28 U.S.C. § 2254** |
| **JAMES McKINNEY**, Warden, | |
| Respondent. | |

_____

This matter is before the Court on Petitioner Dion Scott Miller's [hereinafter Mr. Miller], 28 U.S.C. § 2254 Petition. After a bench trial, a judge convicted Mr. Miller in the Iowa District Court for Webster County of first degree burglary in violation of I.C.A. § 713.1 (2007). See State v. Miller, 767 N.W.2d 421 (Table) (Iowa Ct. App. 2009). He is currently incarcerated in the Fort Dodge Correctional Facility in Fort Dodge, Iowa.

## I. FACTUAL BACKGROUND

As recounted in Miller, 767 N.W.2d 421 (Table) at 1-3 the following facts were clear from the trial testimony: Over a period of about six years, Mr. Miller had a relationship with Renysha Newsome. In August 2007, Newsome broke off the relationship, and at some point began a relationship with Mr. Miller's half-brother, Marcus Hill [hereinafter Mr. Hill].

The following month, Mr. Miller sent a number of threatening text messages to Newsome's cellphone, such as: "U said dat [expletive] u dead"; "u dead"; "N if u eva say nothing to me I will kill ur trifling ass."

Very early in the morning of October 3, 2007, Ms. Newsome received a couple of text messages from Miller asking about her whereabouts: "Where u at," and "U ain't home [expletive] do wat u do." Ms. Newsome decided to leave her car at the bar they were at and ride with Mr. Hill to his home. Ms. Newsome intentionally did not drive to Mr. Hill's house because she was concerned about parking her car in front of the house where Mr. Miller could see it.

Around 3:00 a.m., Mr. Miller also arrived at Mr. Hill's house. Mr. Hill and Ms. Newsome heard a knock on the front door. Ms. Newsome asked Mr. Hill not to answer the front door, but Mr. Hill said it would be okay to answer it. Mr. Hill instructed Ms. Newsome to go into the bedroom and shut the door. Ms. Newsome did so. Ms. Newsome could not see what was going on in the front room, but heard grumbling and bumping going on "maybe like someone was wrestling." Mr. Miller then opened the bedroom door and came in. He grabbed

Newsome by the hair and began punching her.  He hit Newsome all over her face.  Hill tried to get Mr. Miller off of Ms. Newsome, repeatedly telling Miller to "get the [expletive] out."  Mr. Hill also told Newsome to call the police.  The beating continued even after Mr. Hill told Mr. Miller to get out.

Eventually, Mr. Hill got a hold on Mr. Miller, enabling Ms. Newsome to escape.  Newsome ran out of the house into the nearby woods, and listened as Mr. Hill and Mr. Miller argued and Hill continued to tell Mr. Miller to get out.  Eventually, Mr. Miller left the house.  Newsome remained hidden in the woods while Mr. Miller drove his car back and forth, apparently looking for Newsome.  Mr. Miller then sought refuge at a friend's house not far from Mr. Hill's home.  Subsequently, Newsome sought medical attention and contacted the police.

As part of their investigation, Iowa Division of Criminal Investigation arranged for Newsome's cousin, Valerie Newsome, to call Mr. Miller on a recorded line.  In the call, Mr. Miller said that Mr. Hill:

> ...didn't want to let me in the house, "cause I sat out there and beat on the

> door, beat on the door because I was ... I
> was peep[ing torn] all night and I said I
> knew what was going on ... [W]hen I [said]
> please open the door, I'm like the police,
> police now the police is on me. He, and
> he, I'm trying to walk in the house, he
> tried a football [tackle] and
> [expletive]...

Ms. Newsome did not actually see Mr. Miller enter the house on October 3, because she was hiding in the bedroom, but she later told the police that Mr. Hill had "let him in." In a recorded interview with Officer Larry Hedlund of the Division of Criminal Investigation on the evening of October 3, Mr. Hill stated that Mr. Miller "came pounding on our door ... so I let him in." Mr. Hill denied tackling Mr. Miller but said that Mr. Miller "pushed" past him.

## II.  PROCEDURAL HISTORY

Mr. Miller went to trial on December 11, 2007, after waiving his right to a jury. At the commencement of trial, Miller's counsel gave a brief opening statement. He explained that Hill was "on the lamb" because of a probation violation and would not be testifying. However, Mr. Miller's counsel stated that Hill had given a recorded statement to the effect that he had "let [Miller] in." Mr. Miller's counsel made it clear that this statement was an important part of his

4

client's defense and that he intended to rely upon it at trial.

Ms. Newsome testified at trial along with several law enforcement officials. The contest at trial was not over whether Mr. Miller had assaulted Ms. Newsome, but whether he had entered Hill's home without a right, license, or privilege to do so. See I.C.A. § 713.1 (2007). Mr. Miller's counsel tried repeatedly to introduce evidence of Mr. Hill's recorded statement that he had "let [Miller] in." However, the State objected on hearsay grounds, and the district court sustained the State's objections.

When the testimony finished around mid-day, Mr. Miller's counsel asked that the court wait until 1:00 p.m. to see if Mr. Hill would appear. (The mother of Mr. Miller and Mr. Hill had appeared and testified.). The court agreed to this recess, but Mr. Hill did not arrive. At that point, Mr. Miller's counsel moved for a mistrial. The district court asked if a motion to continue had been filed, but Mr. Miller's counsel indicated that he was asking for a new trial rather than a continuance. The district court denied the motion for a mistrial. Subsequently, the court found Mr. Miller guilty

of first-degree burglary in violation of I.C.A. §§ 713.1 and
713.3(1)(c).   The Court denied Miller's motion for a new
trial.

Mr. Miller then appealed his conviction.  See <u>Miller</u>, 767
N.W.2d 421 (Table) at 1-5.  Mr. Miller argued that:

> the district court should have admitted
> evidence of Hill's out-of-court statement
> that he "let him [Miller] in."  Miller does
> not dispute that the statement is hearsay,
> but maintains it should have been admitted
> under the residual exception set forth in
> Iowa Rule of Evidence 5.803(24) and
> 5.804(5)....

<u>Id.</u>  The Iowa Court of Appeals concluded that the district
court was within its discretion to exclude the hearsay
testimony, stating that:

> [a] district court has no discretion to
> deny the admission of hearsay that falls
> within a hearsay exception, and no
> discretion to admit hearsay if it is not
> covered by an exception.  <u>Id.</u>; <u>State v.</u>
> <u>Dullard</u>, 668 N.W.2d 585, 589 (Iowa 2003).
> ...
> Essentially, the rule sets forth five
> requirements that must be met before
> evidence can be admitted under the residual
> exception:   (1)  trustworthiness;  (2)
> materiality; (3) necessity; (4) notice; and
> (5) service of the interests of justice.
> <u>State v. Rojas</u>, 524 N.W.2d 659, 662-63
> (Iowa 1994); <u>State v. Kone</u>, 557 N.W.2d 97,
> 100 (Iowa Ct. App. 1996).  The district
> court is to make findings on each of these

criteria, and each must be satisfied before the evidence can be admitted. <u>State v. Weaver</u>, 554 N.W.2d 240, 247 (Iowa 1996), overruled on other grounds by <u>State v. Hallum</u>, 585 N.W.2d 249, 254 (Iowa 1998); <u>Kone</u>, 557 N.W.2d at 100–01. Here the district court found that the criteria of materiality, notice, and service of the interests of justice had been met. However, it determined the statement to be insufficiently trustworthy. This factual finding is entitled to deference, and should be upheld if supported by substantial evidence. <u>State v. Cagley</u>, 638 N.W.2d 678, 681–82 (Iowa 2001) ...We believe the district court's finding on the trustworthiness requirement was supported by substantial evidence. ...Hill's statement was not made under oath. Hill was also Miller's half-brother. Moreover, the recorded interview as a whole suggests that Hill may have been somewhat downplaying the incident. For example, Hill said, "I don't know if [Miller] was really hitting her" until Officer Hedland responded, "Well, somebody hit her, she's got cuts and bruises," at which point Hill replied, "Yeah, that's what I was gonna say, like you said, she got a lot of cuts, so he must a been hitting, you know." Similarly, in the interview, Hill denied having an understanding why Miller would care if Hill was with Newsome. Accordingly, we sustain the district court's determination that Hill's out-of-court statement did not meet the trustworthiness element of the residual hearsay exception. We also note, as did the district court, that Miller apparently

> made no attempt to subpoena Hill for trial,
> nor did Miller move for a continuance to
> try to locate Hill when essentially invited
> to do so by the district court.

_Miller_, 767 N.W.2d 421 (Table) at 2-3.  Mr. Miller made several other arguments pro se, which the Court of Appeals considered and rejected.  _Id._ at 4-5.

Mr. Miller then filed a post conviction relief action, arguing that, "his trial attorney was ineffective in failing to subpoena Hill for trial and in failing to seek a continuance of the trial until Hill was found..." _Miller v. State_, 805 N.W.2d 397 (Table), 1 (Iowa Ct. App. 2011).  The Court of Appeals denied Mr. Miller's request for post conviction relief, stating that:

> First, Miller made admissions that his
> entry into the home was forced... in a
> recorded telephone call ...he stated
> "[Hill] didn't want to let me in the
> house," "I beat on the door," and "[Hill]
> tried a football [tackle]" once he gained
> entry.  [S]econd, Hill's out-of-court
> statement was not entirely exculpatory.
> Although Hill did say he let Miller in, he
> also said that Miller was "pounding on the
> door," and Miller pushed past him once the
> door was opened... Third, Hill's statement
> that he let Miller into his house was
> cumulative of the ex-girlfriend's trial
> testimony that Hill told her he let Miller
> in.  See _Schrier v. State_, 347 N.W.2d 657,
> 664 (Iowa 1984) (noting the failure to

> produce cumulative testimony is not a
> sufficient showing of prejudice in an
> ineffective-assistance claim). Finally,
> even if Miller's initial entry into Hill's
> home was not forced, Hill appeared to
> concede at the postconviction relief
> hearing that Miller's right to be in the
> home ended at some point thereafter. See
> Iowa Code § 713.1 (stating a defendant's
> presence in an occupied structure is
> unlawful if the defendant remains in the
> structure after the defendant's "right,
> license or privilege to be there has
> expired")... Specifically, he said he told
> Miller to "get the [expletive] out" of the
> house. This concession was consistent with
> the ex-girlfriend's trial testimony... We
> conclude there is no reasonable probability
> the result of Miller's trial would have
> been different had his trial attorney
> secured the testimony of Hill or asked for
> a continuance so that he could be located.

_Miller_, 805 N.W.2d 397 (Table) at 1 -2.  Mr. Miller then filed

the present Petition under 28 U.S.C. § 2254.

## III.  ISSUES

Mr. Miller raises two issues.  Mr. Miller argues that 1)

his trial counsel provided ineffective assistance of counsel

for his failure to take Hill's deposition, subpoena Hill for

trial, or otherwise secure Hill for trial; and 2) that his

trial counsel provided ineffective assistance of counsel for

his failure to seek a continuance when Hill failed to appear for trial.[1]

## IV.  LAW AND ANALYSIS

28 U.S.C. § 2254(a) provides that a federal court shall entertain an application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States.

A federal court's review of a State court decision under § 2254 is deferential.  Lomholt v. Iowa, 327 F.3d 748, 751 (8th Cir. 2003).  A state court decision on the merits should not be overturned unless it:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable

---

[1]  Mr. Miller's pro se Petition alleged six grounds for relief.  The brief prepared by Mr. Miller's attorney addresses only two of those arguments.  According to his brief, Mr. Miller's appointed counsel has conferred with Mr. Miller and Mr. Miller has decided to waive those grounds not briefed by his attorney.

> determination of the facts in light of the
> evidence presented in the State court
> proceeding.

28 U.S.C. § 2254(d)(1)-(2).

A State Court decision contains an unreasonable application of Supreme Court law if it makes "a conclusion opposite that reached by [the] Court on a question of law or . . . decides a case differently than [the] Court has on a set of materially indistinguishable facts." 327 F.3d at 752 (quoting Williams v. Taylor, 529 U.S. 362, 413 (2000)). A State court's factual findings are presumed correct. 28 U.S.C. § 2254(e)(1). In order to overcome this presumption, Mr. Miller must show "by clear and convincing evidence that the state court's . . . factual findings do not enjoy support in the record." 327 F.3d at 752 (citing 28 U.S.C. § 2254(e)(1)).

Both issues Mr. Miller raised in his 28 U.S.C. § 2254 Petition involve a claim for ineffective assistance of counsel. "[T]he right to counsel is the right to effective assistance of counsel." McMann v. Richardson, 397 U.S. 759, 771 (1970). The Fourteenth Amendment Due Process Clause guarantees the right to a fair trial. Strickland v.

Washington, 466 U.S. 668, 684-85 (1984).  The Sixth Amendment
guarantees the right to assistance of counsel.  U.S. Const.
Amend. VI.  In Strickland, the Supreme Court elaborated on the
relationship between the Fourteenth and Sixth Amendments:

> The benchmark for judging any claim of
> ineffectiveness must be whether counsel's
> conduct so undermined the proper
> functioning of the adversarial process that
> the trial cannot be relied on as having
> produced a just result.

466 U.S. at 686.  The moving party must demonstrate two
components to establish ineffective assistance of counsel:
(1) counsel's conduct was deficient, and (2) prejudice.  466
U.S. at 687.  Counsel's conduct is deficient when it is
unreasonable "under prevailing professional norms."  Padilla
v. Kentucky, 130 S. Ct. 1473, 1481 (2010).  A showing of
prejudice requires that "counsel's errors" be so serious that
they "deprive the defendant of a fair trial . . . ."  466 U.S.
at 687.  In other words a Petitioner must show "that there is
a reasonable probability that, but for counsel's
unprofessional errors, the result of the proceeding would have
been different."  466 U.S. at 694.  A reasonable probability
does not require a different outcome be proven by a
"preponderance of the evidence" but does require "a

probability sufficient to undermine confidence in the outcome." Id.

## A. Uncalled Witness

Mr. Miller argues that his trial attorney provided ineffective assistance of counsel by failing to call Mr. Hill as a witness in Mr. Miller's trial. Mr. Miller argues that because Mr. Hill would have testified that he let Mr. Miller in to the house, the prosecution would have been unable to prove the charge of burglary. As discussed above, to prove ineffective counsel, Mr. Miller must show that his counsel failed to perform an essential duty and that failure resulted in prejudice.

Accordingly, the first factor the Court must consider is whether counsel failed to perform an essential duty. The 8th Circuit has stated that:

> strategic choices resulting from lack of diligence in preparation and investigation [are] not protected by the presumption in favor of counsel. Kenley v. Armontrout, 937 F.2d 1298, 1304 (8th Cir. 1991); see also Wiggins v. Smith, 539 U.S. 510, 527 (2003) (Strickland does not establish that a cursory investigation automatically justifies a tactical decision.... Rather, a reviewing court must consider the

> reasonableness of the investigation said to
> support that strategy. (citing <u>Strickland</u>,
> 466 U.S. at 691).

<u>Armstrong v. Kemna</u>, 534 F.3d 857, 864-65 (8th Cir. 2008)(internal quotation marks omitted). Mr. Miller argues that his counsel's decision to not even subpoena Mr. Hill was ineffective assistance. Specifically, Mr. Miller argues that because Mr. Hill's testimony was so critical to his defense that failure to take every reasonable step to secure Mr. Hill's testimony was ineffective.

The Respondent argues that there was virtually no chance Mr. Hill would have appeared at trial, no matter what steps Mr. Miller's counsel took. The Respondent points out that Mr. Hill had an outstanding warrant against him, and that he would have been arrested had he appeared at the Courthouse. The Respondent's implication is that because there was virtually no chance that Mr. Hill would appear to testify, Mr. Miller's trial counsel was correct to concentrate his efforts on getting the district court to consider Mr. Hill's previous out of court statement that he had let Mr. Miller in the house.

However, Mr. Miller's trial counsel failed to convince the Iowa District Court to admit Mr. Hill's out of court

statement.[2]  Thus, because Mr. Hill was not available to testify, Mr. Miller's already meager defense crumbled.  In the Armstrong case, cited by Mr. Miller, the 8th Circuit reviewed a situation where trial counsel failed to properly secure the presence of several out of state witnesses.  Counsel's failure apparently was based on a lack of understanding of how to secure the presence of out of state witnesses via the applicable state laws.

In a similar case, the 8th Circuit ruled that,"

> we find it difficult to understand the logic of trial counsel's decision to forego even attempting to subpoena the witnesses, particularly when Armstrong's trial date drew near, when trial counsel was unsuccessful in her attempts to contact the witnesses to make alternative arrangements, and when the witnesses lacked funds to travel at their own expense.  See Garton v. Swenson, 417 F. Supp. 697, 702 (W.D. Mo. 1976) ... Counsel need not attain perfection, but he [or she] must exercise reasonable diligence." Laws v. Armontrout, 863 F.2d 1377, 1386 (8th Cir. 1988) (en banc) (quotation omitted).  Trial counsel did not exercise reasonable diligence [in this case]...

---

[2]  As noted by the Iowa Court of Appeals, there is no indication the trial court erred in refusing to consider the evidence.  Rather, it was counsel's failure for failing to at least try to attain a sworn out of court statement from Mr. Hill.

<u>Armstrong</u>, 534 F.3d at 865-66.

This Court is persuaded that the present situation is very similar to the <u>Armstrong</u> facts. While trial counsel need not attain perfection, he must exercise reasonable diligence. There is no guarantee that counsel could have secured Mr. Hill's participation in the trial. However, counsel could have attempted to depose Mr. Hill, get a sworn statement from Mr. Hill or subpoena Mr. Hill. Counsel's failure to take these essential steps to secure exculpatory evidence necessary to Mr. Miller's defense is clearly deficient.

Once counsel's performance has been shown to be deficient, the Court must next consider whether deficient performance prejudiced Mr. Miller. Counsel's deficiency was failing to secure Mr. Hill or Mr. Hill's testimony in a reliable manner for trial. Accordingly, to measure whether that deficiency had a prejudicial effect on Mr. Miller, Mr. Hill's proffered testimony must be added to and contrasted against the body of evidence that actually was presented at his trial. <u>Armstrong v. Kemna</u>, 590 F.3d 592, 600 (8th Cir. 2010) cert. denied, 130 S. Ct. 3369 (U.S. 2010) citing <u>McCauley-Bey v. Delo</u>, 97 F.3d 1104, 1105-06 (8th Cir. 1996).

The Court must gauge the likely outcome of a trial based on this total body of evidence.  Id.  Prejudice exists if there is a reasonable probability that the outcome would be different than that at the actual trial.  In conducting this analysis, the Court is "mindful of:  (1) the credibility of all witnesses, including the likely impeachment of the uncalled defense witnesses; (2) the interplay of the uncalled witnesses with the actual defense witnesses called; and (3) the strength of the evidence actually presented by the prosecution."  McCauley-Bey, 97 F.3d at 1105-06.

Mr. Miller had only one potential witness, Mr. Hill.  Mr. Miller argues that had Hill testified, he would have testified that he let Mr. Miller in this house.  This assertion is bolstered by testimony that Mr. Hill gave at Mr. Miller's post-conviction hearing.  At said hearing, Mr. Hill testified that he merely bumped into Mr. Miller in the home's small entry way.  Finally, Mr. Hill testified at the post-conviction hearing that although he attempted to stop Mr. Miller's assault on Ms. Newsome, he never asked or ordered Mr. Miller to leave the house until after Ms. Newsome left the house.  Mr. Miller argues that Mr. Hill's testimony "would have cast

reasonable doubt as to the element of whether Miller entered the residence without a right, license, or privilege to do so, or whether he remained on the property after his right, license, or privilege to be there had expired." Docket No. 11, p. 14-15.

The Respondent argues that Mr. Miller suffered no prejudicial harm as a result of his counsel's failure to call Mr. Hill to the stand. The Respondent argues that

> In this case we have an express credibility finding by the judge who heard the victim testify, finding the victim to be "a very credible witness. . .." Judgment Entry p. 3; DA App. 138. See generally State v. McPhillips, 580 N.W.2d 748, 753 (Iowa 1998) (Finder of fact is free to reject certain evidence and credit other evidence)... The Petitioner's seemingly unending stream of graphic text messages from his own cell phone before and after the attack ... further sealed his fate... Petitioner was then recorded by the [law enforcement] in a phone conversation with the victim's cousin admitting key elements of the crime... Petitioner was recorded admitting on the phone that his brother "didn't want to let me in the house" ... Petitioner admitted that he then "sat out there and beat on the door," asking his brother to "[p]lease open the door" and then claiming "the police is on me."... When the door was finally opened, Petitioner admitted that as he tried to "walk in the house" his brother tried to stop him by football tackling him ...

Docket No. 14, p. 20-22.

The Respondent's argument that Mr. Hill's failure to testify did not prejudice Mr. Miller is bolstered by the fact that the original trial judge hypothetically considered Mr. Hill's testimony. In his ruling, trial Judge Ostlund stated that:

> Defendant further argues that statements made outside the court by Mr. Hill suggested that he gave the defendant authority. This testimony was not admitted and [is] not part of the record. Even if admitted, these alleged out of court statements by Mr. Hill are[,] for evidentiary purposes[,] certainly tempered and possibly rendered moot by the incriminating statements by the defendant himself.

Docket No. 15, 4(d), p. 149. Clearly the trial Judge Ostlund considered hypothetical/out of court exculpatory statements made by Mr. Hill. While the trial court did not rely on those statements in convicting Mr. Miller, the trial court specifically said that even if Mr. Hill's exculpatory statements were considered, Mr. Miller would still be guilty based on the weight of the evidence. The Respondent correctly points out that Mr. Hill's testimony would have suffered severe credibility questions, since it conflicted

with how Mr. Miller described the incident. Essentially, you had Ms. Newsome, the victim, who testified (credibly, according to the trial court) that Mr. Miller threatened her via text message and then burst into the house and refused to leave even though Mr. Hill demanded he get out. You have Mr. Miller's recorded phone call saying he broke into the house and that Mr. Hill tackled him to try and stop him. And then you have Mr. Hill's testimony that he let Mr. Miller in. The Respondent argues, and this Court agrees, that Mr. Hill's testimony would not have been deemed credible.

As mentioned above, the trial court hypothetically considered Mr. Hill's testimony and stated that it would not change the outcome of the trial. For the reasons set out above, Mr. Hill's testimony would have suffered from severe credibility issues, namely, that it was contradicted by both a (credible) witness and Mr. Miller's own statements. It also does not track logically with other evidence in this case. (Mr. Hill was hiding Ms. Newsome from Mr. Miller, Mr. Miller was upset that Ms. Newsome was in a relationship with Mr. Hill, Mr. Miller was sending threatening text messages, and Mr. Miller arrived at the house to beat Ms. Newsome.).

Accordingly, had Mr. Hill testified at the trial, or had he testified via deposition or affidavit, the result of the trial would have been the same. Because Mr. Miller would have been convicted regardless of the ineffective assistance of his trial counsel, Mr. Miller has failed to prove the element of prejudice.

**B. Failure to Seek Continuance**

Mr. Miller argues that his trial counsel was constitutionally ineffective for failing to request a continuance when Mr. Hill failed to appear at the courthouse for Mr. Miller's trial. Mr. Miller's brief quotes the Iowa District Court's Post-Conviction Ruling, which says that, "[i]f there is any fault of [trial counsel] this court believes that it concerns his failure to request a continuance. Such an important witness for the defense would make it difficult for the trial court to deny the motion." Docket No. 11, p. 16.

This is, again, an ineffective assistance of counsel argument. Accordingly, Mr. Miller must prove both deficient representation and prejudice. As discussed extensively above, this Court believes Mr. Miller's trial counsel failed to

perform an essential duty when it failed to subpoena Mr. Hill for trial. Taking every reasonable step to ensure Mr. Hill's appearance was essential in providing Mr. Miller an adequate defense. Trial counsel abandoned an essential duty when he did not ask for a continuance. In fact, the trial judge asked, and perhaps even suggested that Mr. Miller seek a continuance and his counsel *still* refused to do so. <u>Miller</u>, 767 N.W.2d 421 (Table) at 2. There is no doubt that trial counsel's failure to request a continuance was deficient.

Because it is clear that Mr. Miller's trial counsel was deficient for failing to perform an essential duty, the question is whether that failure resulted in prejudice to Mr. Miller. Again, that answer is no. As discussed extensively above on pages 15, 16, 17, 18, 19, 20 and 21, Mr. Hill's testimony would not have altered the outcome of the trial. The trial judge considered Mr. Hill's testimony in a hypothetical manner and stated that it would not have affected the outcome of the trial. Accordingly, counsel's failure to request a continuance did not effect Mr. Miller's conviction for burglary. Mr. Miller has failed to show he was prejudiced by his counsel's failure to ask for continuance.

## C.  Failure to Participate in I.C.A. § 822 Hearing

During the hearing, Mr. Miller articulated a new issue, that he had been denied the opportunity to fully participate in his post-conviction relief hearing before the Iowa District Court.  Specifically, Mr. Miller stated that he participated and testified in that hearing via telephone.  However, he was not able to hear the testimony of other witnesses or communicate with his attorney in real time during the hearing.

Post-conviction relief actions in Iowa are governed by I.C.A. § 822.7, which says that:

> The application shall be heard in, and before any judge of the court in which the conviction or sentence took place...  All rules and statutes applicable in civil proceedings including pretrial and discovery procedures are available to the parties.  The court may receive proof of affidavits, depositions, oral testimony, or other evidence, and may order the applicant brought before it for the hearing...

I.C.A. § 822.7.  Accordingly, a post-conviction relief action is civil in nature.  Generally, in civil cases, counsel can appear on behalf and in leu of their clients.  Moreover, it appears that the trial court has discretion regarding whether the applicant appears:  "[The Court] **may** order the applicant brought before it for hearing...)."  Id., (emphasis added).

23

Accordingly, this Court cannot say as a matter of law that Mr. Miller had a right to interact with the other parties during his post-conviction relief hearing.

Additionally, as Mr. Miller's counsel conceded during the hearing, this was not an issue raised in Mr. Miller 28 U.S.C. § 2254 Petition.  Accordingly, it is not properly before this Court.  Furthermore, although Mr. Miller states he submitted this issue to the Iowa Court of Appeals, there is no indication in the record that this is an issue they had an opportunity to consider.  As noted above, this Court can only consider an issue if it has been presented to the state court and the state court made an unreasonable application of federal law.  There is no indication that the Mr. Miller has exhausted his state court remedies on the question of whether he was denied the opportunity to participate in his post-conviction relief hearing.

**V.  CONCLUSION**

Ultimately, the test in 28 U.S.C. § 2254(d)(1)-(2)(1)sets a very tough burden for Mr. Miller to surmount, namely a showing that the Iowa courts acted unreasonably.  Mr. Miller has failed to make that showing.  For the reasons discussed above, Mr. Miller's 28 U.S.C. § 2254 Petition is **denied.**

Further, Mr. Miller's counsel, Zoshua Zeutenhorst, has filed a motion to withdraw (Docket No. 23) stating that he has accepted other employment and will no longer be in the private practice of law. The motion further states that Petitioner has requested that substitute counsel be appointed to represent him for the remainder of this matter. Petitioner's motion, Docket No. 23, is **granted**. Even though the denial of the habeas petition closes this case, the Court is persuaded that substitute counsel should still be appointed so that the Petitioner is fully represented for any other additional matters or filings that may be required. The Clerk of Court shall appoint Mr. Miller a new lawyer in this case.

**IT IS SO ORDERED** this 12th day of December, 2013.

Donald E. O'Brien, Senior Judge
United States District Court
Northern District of Iowa